MARTIN L. WELSH, ESQ.
Nevada State Bar No. 8720
MEGAN K. MAYRY MCHENRY, ESQ.
Nevada State Bar No. 9119
LAW OFFICE OF HAYES & WELSH
199 North Arroyo Grande Blvd., Suite 200
Henderson, Nevada 89074
Phone: 702-434-3444
Fax: 702-434-3739
E-Mail: m.mayry@lvlaw.com
*Attorneys for Plaintiff,*
RAPID CAPITAL FINANCE, LLC
*dba Rapid Capital Funding*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In Re:<br><br>SERGE ARMANI and ALINA ARMANI,<br><br>Debtors. | CASE NO.: 16-10160-mkn<br>Chapter 7 |
| RAPID CAPITAL FINANCE, LLC<br>dba Rapid Capital Funding, a Florida Limited-Liability Company,<br><br>Plaintiff,<br><br>v<br><br>SERGE ARMANI and ALINA ARMANI,<br><br>Defendants. | Adv. Proc. No.: |

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTOR AND DISCHARGEABILITY OF DEBT

COMES NOW, Creditor/Plaintiff, Rapid Capital Finance (hereinafter referred to as "Plaintiff"), by and through its counsel of record, the Law Office of Hayes and Welsh, and hereby complains of Debtors/Defendants, Serge Armani and Alina Armani (hereinafter referred to as "Debtors"), as follows:

1

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). If the Court finds this is not a core matter, then Plaintiff consents to entry of judgment by the United States Bankruptcy Judge.

2. Defendants are the Debtors in the above-entitled Chapter 7 bankruptcy proceeding, and Plaintiff, above named, is a creditor of said Defendants.

3. This is an adversary proceeding in which Plaintiff is requesting that the Court deny a discharge to Debtors and/or hold Debtors' debt to Plaintiff non-dischargeable.

## GENERAL ALLEGATIONS

4. On or October 21, 2015, Plaintiff entered into a Merchant Agreement with Miko, LLC dba Miko Group (hereinafter "Miko"), under which Miko received a merchant cash advance of $136,000.00 from Plaintiff. Debtor, Alina Armani (hereinafter "Ms. Armani") signed the Merchant Agreement on behalf of Miko.

5. In consideration for the merchant cash advance, Miko sold all of its future accounts receivable, contract rights, etc. to Plaintiff until the amount of $175,440.00 had been repaid in full to Plaintiff.

6. Miko agreed to have all of its receivables paid into one bank account and authorized Plaintiff to make a daily withdrawal from that account in the amount of $878.00 until the balance of $175,440.00 was paid in full.

7. Pursuant to the Merchant Agreement, a default in repayment thereunder results in a fee of $2,500.00. Also pursuant to the Merchant Agreement, Defendants are responsible for paying all reasonable costs associated with breaching and enforcement of the Merchant Agreement, including but not limited to, court costs and attorney's fees.

8. On October 21, 2015, Ms. Armani signed a Security Agreement and Guaranty on behalf of herself personally and Miko. Under the terms of the Security Agreement, Miko granted to Plaintiff a security interest in all its "accounts, chattel paper, documents, equipment, [etc.]" and all "proceeds" as those terms are defined in UCC article 9.

9. The security interests granted by the Security Agreement were perfected by the filing of a UCC-1 Financing Statement with the Nevada Secretary of State ("UCC-1").

10. Under the terms of the Guaranty, Ms. Armani personally guaranteed the performance of all of the representations, warranties and covenants made by Miko in the transaction and unconditionally guaranteed to pay the indebtedness owed by Miko under the Merchant Agreement and/or Security Agreement.

11. On or about October 29, 2015, Plaintiff funded the cash advance by providing the promised funds to Miko.

12. On or about November 4, November 5, November 6 and November 9, 2015, daily withdrawals of $878.00 were taken by Plaintiff, pursuant to the Merchant Agreement, from Miko's receivables account.

13. Thereafter, Miko closed that account or otherwise failed to make or allow any further scheduled payments to Plaintiff.

14. On January 14, 2016, Defendants filed their Chapter 7 Bankruptcy Petition listing the debtors as Serge Armani aka Sargis Torosyan dba Miko LLC dba Miko Group, and Alina Armani aka Alina Fahratova.

...

...

...

...

Page 3

## FIRST CLAIM FOR RELIEF
(Denial of Discharge of Debt - 11 U.S.C. § 523(a)(2))

15. Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 14 of this Complaint as though fully set forth herein.

16. As part of the application process for the cash advance, Debtors were interviewed by a representative of Plaintiff. At that time, Debtors represented that Miko had 20 trucks and 25 drivers on payroll with about half of the trucks paid off and the other half a mixture of leases and financing. Debtors further represented that the cash advance would be used to purchase trucking equipment.

17. At Debtors' 341 Meeting, Mr. Armani testified that Miko had only owned 10 trucks, they were all leased, and none of the trucks were ever paid off. Mr. Armani further testified that the cash advance was obtained in order for Miko to survive and it was used for Miko's bills.

18. Also as part of the application process, Ms. Armani signed a Small Business Finance Prequalification certifying that she was 100% owner of Miko. She further certified that all information and documents submitted in connection with the application were true, correct, and complete.

19. At Debtors' 341 Meeting, Mr. Armani testified that Miko was his dba, that he was the manager, that he had filed the fictitious firm name, and that Miko was not a separate entity.

20. Also as part of the application process, Miko provided a Profit & Loss Statement to Plaintiff, showing net income of $291,473.82 for January through September 2015.

21.     At Debtors' 341 Meeting, Mr. Armani testified that Miko had used all of the income that was reported on the Profit & Loss Statement to pay Miko's bills, such as insurance, fuel and maintenance.

22.     Based upon information and belief, the Profit & Loss Statement provided by Miko contained false and/or misleading information.

23.     The Merchant Agreement states: "Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to repay this obligation and that the information provided herein and in all of RCF documents, forms and recorded interviews is true, accurate and complete in all respects."

24.     Paragraph 2.1 of the Merchant Agreement further states: "Its bank and financial statements, copies of which have been furnished to RCF, and future statements which will be furnished hereafter at the discretion of RCF, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise RCF of any material change in its financial condition, operation or ownership."

25.     At Debtors' 341 Meeting, Mr. Armani testified that Miko ceased operations in November 2015, the following month after the cash advance was funded by Plaintiff. Mr. Armani further testified that the Department of Transportation closed Miko due to drivers' violations that were issued throughout 2015. As a result of the violations, Miko's safety score went down. Mr. Armani further testified that the Department of Transportation conducted an inspection of Miko because of the violations, approximately two months before

Page 5

it shut down Miko. As a result of the inspection, Miko was shut down by the Department of Transportation.

26. Despite the fact that the drivers' violations were issued, Miko's safety score had decreased, and the Department of Transportation inspection occurred before the application process for the cash advance and before the cash advance funded, Debtors failed to disclose any information regarding the violations, safety score and inspection to Plaintiff.

27. At Debtors' 341 Meeting, Mr. Armani further testified that Miko had to cease operations because Miko's insurance did not renew. Mr. Armani testified that with no insurance and because of the bills, there was no choice but for Miko to shut down.

28. Debtors failed to ever disclose to Plaintiff that Miko's insurance did not renew and that Miko was unable to pay its bills.

29. Debtors further failed to ever disclose to Plaintiff that their financial condition had deteriorated to the point that they were unable to pay Plaintiff as agreed.

30. Paragraph 2.12 of the Merchant Agreement states: "Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes."

31. At the time that the Merchant Agreement was signed, Debtors were aware that Miko was not in good standing since Miko had received multiple violations and was the subject of an investigation by the Department of Transportation. Debtors further failed to inform Plaintiff after the Merchant Agreement was signed that the Department of Transportation intended to close Miko and did in fact close Miko due to violations.

32. Additionally, based upon information and belief, Debtors intended to use and did in fact use Miko's funds, including the cash advance from Plaintiff, for personal, family or household purposes, in violation of the Merchant Agreement.

33. Based upon information and belief, Debtors never intended to comply with the terms of their agreement with Plaintiff and pay Plaintiff for the cash advance as agreed.

34. Based on the above facts, information and belief, Debtors obtained the cash advance from Plaintiff through false pretenses, false representations, and/or actual fraud.

35. Based on the above facts, information and belief, Debtors obtained the cash advance from Plaintiff through the use of false statements in writing respecting Debtors' and Miko's financial condition, with the intent to deceive Plaintiff and upon which Plaintiff reasonably relied.

36. Pursuant to 11 U.S.C. § 523(a)(2), the discharge of Defendants' debt to Plaintiff should be denied.

37. Plaintiff is entitled to damages in an amount to be established based on the evidence, plus interest at the contractual rate, costs and attorney's fees.

38. Plaintiff has been required to obtain the services of the Law Office of Hayes and Welsh to prosecute this action and is entitled to reasonable attorney's fees therefor.

## SECOND CLAIM FOR RELIEF
(Denial of Discharge - 11 U.S.C. §727(a)(2), (a)(3), (a)(4), and (a)(5))

39. Plaintiff repeats, realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 38 of this Complaint as though fully set forth herein.

40. Based upon information and belief, Debtors have made false representations in their Chapter 7 Bankruptcy Petition and Schedules, including but not limited to the following:

a) Mr. Armani made $0.00 in income during the calendar years, 2014 and 2015.

b) Ms. Armani made $0.00 in income during the calendar year 2015. Ms. Armani made $15,838.00 during the calendar year 2014.

c) Debtors' expenses only consist of car payments in the total amount of $2,266.00 and alimony in the amount of $200.00 per month.

d) As of January 14, 2016, Debtors had $0.00 in combined monthly income.

e) The amount of the debt to Plaintiff is unknown and is unsecured.

41. Based upon information and belief, Debtors made false representations at their 341 Meeting, including but not limited to the following:

a) Debtors' BMW and Nissan are Mr. Armani's mother's vehicles and she makes the payments on them.

b) The Dodge Ram is Debtors' son's vehicle.

c) Debtors live off of $800.00 per month which is given to them by Mr. Armani's mother.

d) Mr. Armani's mother has paid Debtors' bills for the past two years.

e) Mr. Armani's mother pays the rent for 6549 Gossamer Fog Ave.

f) In 2012, Mr. Armani's mother purchased the property at 4731 San Palo Way for $157,000.00.

g) The money that Debtors received from the sale of 4731 San Palo Way in 2014 went to Miko.

h) Armani Corporation is owned by Mr. Armani's mother.

i) Debtors have never owned shares in Armani Corporation.

j) Mr. Armani has not used his Nevada real estate license in over one year and it has been a long time since Mr. Armani sold or bought anything.

k) Miko's assets were never used to pay for Debtors' personal expenses.

Page 8

l) Debtors did not receive any income from Miko.

m) All of Miko's assets were used to pay Miko's bills and Miko does not have any remaining assets.

n) The cash advance from Plaintiff to Miko was used to pay Miko's bills.

42. Based on the above facts, information and belief, Debtors have transferred and concealed property of themselves and Miko within one year prior to filing and/or after filing their Chapter 7 Bankruptcy Petition.

43. Based on the above facts, information and belief, Debtors have concealed or destroyed their personal records and/or Miko's records.

44. Based on the above facts, information and belief, Debtors have knowingly and fraudulently made a false oath or account in this bankruptcy case and/or withheld documents related to theirs and Miko's financial affairs.

45. Based on the above facts, information and belief, Debtors have failed to explain any loss of assets or deficiency of assets, including but not limited to, Miko's assets which were granted as a security interest to Plaintiff.

46. Pursuant to 11 U.S.C. §727(a)(2), (a)(3), (a)(4), and (a)(5), the discharge of Debtors should be denied.

47. Plaintiff is entitled to damages in an amount to be established based on the evidence, plus interest at the contractual rate, costs and attorney's fees.

48. Plaintiff has been required to obtain the services of the Law Office of Hayes and Welsh to prosecute this action and is entitled to reasonable attorney's fees therefor.

WHEREFORE, Plaintiff prays for judgment against Debtors as follows:

1. That Debtors' debt due and owing to Plaintiff be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2).

2. That Debtors' discharge be denied pursuant to 11 U.S.C. §727(a)(2), (a)(3), (a)(4), and (a)(5).

3. For damages incurred according to proof, plus interest at the contractual rate from the date of default until paid in full, costs and attorney's fees;

4. For attorney's fees and costs of suit incurred herein;

5. For such other and further relief as this Court may deem just and proper in the premises.

DATED this  2nd  day of March, 2016.

LAW OFFICE OF HAYES & WELSH

MEGAN K. MAYRY MCHENRY, ESQ.
Nevada State Bar No. 9119
199 N. Arroyo Grande Blvd., Ste. 200
Henderson, NV 89074
*Attorneys for Creditor/Plaintiff, RAPID CAPITAL FINANCE, LLC dba Rapid Capital Funding*

Page 10